**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

CHRISTOPHER CHASE HALL,            :

     Petitioner,            :

vs.            :            CA 21-0494-TFM-MU

CHRISTOPHER GORDY,            :

     Respondent.

## <u>REPORT AND RECOMMENDATION</u>

Christopher Chase Hall has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. (Doc. 1). Petitioner challenges the validity of his December 6, 2017 attempted rape in the first degree, domestic violence with the underlying offense of strangulation (2 counts), and third-degree felony domestic violence (2 counts) convictions in the Circuit Court of Mobile County, Alabama. He was sentenced on January 22, 2018 to consecutive 33-year terms of imprisonment for attempted rape and the two counts of domestic violence/strangulation and 1 year for each third-degree felony domestic violence conviction. The Alabama Court of Criminal Appeals affirmed Hall's convictions and sentences by unpublished memorandum opinion issued on October 5, 2018. *See Hall v. State,* 290 So.3d 11 (Ala.Crim.App. 2018) (table). Hall's petition for rehearing was denied on November 2, 2018, *id.,* and his petition for writ of certiorari to the Alabama Supreme Court was denied on January 4, 2019, *see Ex parte Hall,* 295 So.3d 609 (Ala. 2019) (table), with the certificate of final judgment of affirmance issuing that same date (*see* Doc. 13-14, PageID. 1044).

Hall filed a Rule 32 petition in the Circuit Court of Mobile County, Alabama collaterally attacking his convictions and sentences on or about December 20, 2019. (*Compare* Doc. 13-15 *with* Doc. 13-20, PageID. 1333). The trial court dismissed Hall's collateral petition on April 1, 2020. (*See, e.g.,* Doc. 13-26, PageID.1431-38). The Alabama Court of Criminal Appeals affirmed the trial court's judgment by unpublished memorandum decision issued on March 5, 2021. (*See* Doc. 13-20). Petitioner's application for rehearing was overruled on April 2, 2021. (Doc. 13-22, PageID. 1372). Hall's petition for writ of certiorari to the Alabama Supreme Court (*see* Doc. 13-23) was denied without written opinion on August 13, 2021 (Doc. 13-24, PageID. 1401), and the certificate of final judgment issued that same date (Doc. 13-25, PageID. 1402).

In his petition before this Court, filed November 12, 2021 (*see* Doc. 1, PageID. 14), Hall raises the following issues which he claims entitle him to federal habeas corpus relief: (1) his appellate attorney provided constitutionally ineffective assistance by failing to ensure a complete record on direct appeal, as he did not move to supplement the record on appeal with copies of the two search warrants issued and the appellate court dismissed one of the grounds of appeal for failure to supplement the record with the search warrants (*compare* Doc. 1, PageID. 8 *with* Doc. 1-1, PageID. 21

& 30-32);[1] (2) the trial court erred in failing to suppress evidence utilized at his trial[2] that had been previously suppressed by the same judge and, therefore, his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure (*compare* Doc. 1, PageID. 9 *with* Doc. 1-1, PageID. 21 & 32-34); and (3) he was entitled to relief on his claim that his possessory interest in his cell phone was violated when the State seized his cell phone without a warrant when he was arrested on February 29, 2016 but then waited some seventeen (17) months before obtaining a search warrant and searching the phone on July 28, 2017 and, therefore, again, his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure (*compare* Doc. 1, PageID. 10 *with* Doc. 1-1, PageID. 21 & 33-34). Respondent contends that this Court is procedurally barred from reaching the merits of the second and third claims for relief raised by Petitioner and that his claim of ineffective assistance of appellate counsel has no merit. (*See* Doc. 13, PageID. 140-46).

This cause is before the Court on the petition (Doc. 1), respondent's answer with attachments (*see* Doc. 13), and petitioner's response to the undersigned's February 25, 2022 show cause order and the answer of the Respondent (*compare* Doc. 15 *with* Docs. 13 & 14). A careful review of the record has been completed. The record contains

---

[1]     The ground of appeal dismissed was Hall's contention that the trial court "erred in denying his motion to suppress text messages and search history that were recovered from Hall's cell phone." (Doc. 13-9, PageID. 1004; *see id.,* PageID. 1005 (recounting the trial court's ruling at the suppression hearing: "'First search warrant obtained by detectives is suppressed and motion is granted. Court rules that the second search warrant obtained by detectives is valid and admissible.'")). This, of course, was the suppression argument based on the holding in *Anderson, infra,* that is, the second claim Petitioner asserts in the instant habeas petition.

[2]     The trial judge determined that the evidence utilized at trial was obtained pursuant to a lawful second search warrant.

sufficient facts upon which the issues under consideration may be properly resolved. Therefore, no evidentiary hearing is required. *Compare Means v. Secretary, Department of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. July 12, 2011) ("[W]here 'the record refutes [a petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.'") (citation omitted)), *cert. denied,* 565 U.S 1217, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012) *with Allen v. Secretary, Florida Dep't of Corrections,* 611 F.3d 740, 745 (11th Cir. 2010) ("A district court is not required to hold an evidentiary hearing if the claims 'are merely conclusory allegations unsupported by specifics,' . . . or 'if the record refutes the applicant's factual allegations or otherwise precludes habeas relief[.]'"), *cert. denied,* 563 U.S. 976, 131 S.Ct. 2898, 179 L.Ed.2d 1192 (2011). This matter has been referred to the undersigned for the entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72, and General Local Rule 72(a)(2)(R).

## **FACTUAL BACKGROUND**

On December 6, 2017, a jury of Hall's peers returned a verdict finding him guilty of attempted rape in the first degree, two counts of domestic violence with the underlying offense of strangulation, and two counts of third-degree felony domestic violence (Doc. 13-6, PageID. 882 & 884-85; *see also id.,* PageID. 885-87 (polling of the jury)), and, on January 22, 2018, he was sentenced to consecutive 33-year terms of imprisonment for attempted rape and the two counts of domestic violence/strangulation and 1 year for each third-degree felony domestic violence conviction (*id.*, PageID. 889 & Doc. 13-7, PageID. 959).

The October 5, 2018, unpublished memorandum decision of the Alabama Court
of Criminal Appeals on Hall's direct appeal, *see Hall v. v. State,* 290 So.3d 11
(Ala.Crim.App. 2018) (table), contains a summary of the evidence produced at trial.

Andrea Beisner testified that she was dating Hall in February 2016,
and that they were living together in Mobile. At around 4:00 a.m. on the
morning of February 23, 2016, Hall suggested that they drive to Dauphin
Island and watch the sun rise. She said that they argued as they were in
the car,[3] that they watched the sun rise, and that on the drive back to
Mobile they were stopped by police. Beisner testified:

> "We were starting to go over that first bridge from the
> beach and driving over, and he was upset, speeding. So, the
> police ended up turning on their lights, and that's when he
> jumped over to the seat [she was occupying]. He was, like, I
> can't, you know, get a ticket. I don't remember exactly what
> he said[.] . . . Well, at that point he had already jumped over
> to the passenger side, and so the car was still moving over
> the bridge. So, I jumped over to the other side to take the
> wheel. And then that's when . . . I tried to pull over on the
> bridge, and they put over the microphone, the police put over
> the microphone to go down to the end of the bridge. So, I
> did, and I pulled off right after the bridge ended."

(R. 135-36.) The police did not give her a ticket and she drove away.
Beisner said that she was angry at Hall and kept telling [yelling at] him that
he could have put her military service in jeopardy.[4] She pulled off the road,
she said, and Hall choked her, and she passed out. When she woke up,
she said, her hands were in her lap, and she was still in the car. Beisner
continued to [drive, while crying] and Hall told her to pull off so that he
could drive the rest of the way back to Mobile.[5] She said:

> "He was driving. We pulled off on some road which I'm not
> familiar with. I know it wasn't the direction back to Mobile,

---

[3]     The argument centered on Hall's belief that Beisner was cheating on him. (*See*
Doc. 13-5, PageID. 662; *see also id.,* PageID. 660-61 (Beisner's testimony that the allegations of
cheating came up before the couple left her apartment in Mobile to travel to Dauphin Island)).

[4]     Beisner also started crying. (Doc. 13-5, PageID. 664). She told Hall she could get
kicked out of the Air Force Reserves if she got a ticket for driving under the influence of alcohol.
(*See id.,* PageID. 664-65).

[5]     But, before she pulled off the road, she said Hall choked her a second time,
causing her again to briefly lose consciousness. (*See* Doc. 13-5, PageID. 667-68).

but we ended up turning on some road. And that's when I started thinking that I [sh]ould, you know, try to get out of all of this. So, he was driving slowly down that road. And it was all like a . . . hill. So, there was like a slope. So, I thought that I might be able to jump out of the car."

(R. 141.) She jumped out and Hall pulled her back in the car. They continued [on] to Mobile and entered her apartment.[6] She sat on the bed and started to cry. Hall told her to shut up. Beisner said that Hall started to take her clothes off, that she fell off the bed, and that Hall "threw me [back] on the bed." Hall tried to have sex with her, she said, but was unsuccessful.[7] She [began to] yell[] louder[8] and Hall put his thumbs in her mouth and pulled her off the bed to the floor by her mouth. When he saw [] blood on her face, he apologized. Beisner told Hall that she needed to go to a doctor because she probably needed stitches. She said that Hall then grabbed a knife and told her to hurt him like he had hurt her. She threw the knife to the floor and left the apartment. Beisner said that she was driving to the hospital and Hall was in the car when Hall said that when they saw her he would be arrested. Beisner turned into a median and jumped out [of] the car. She said that Hall got behind the wheel and drove off. Beisner then called emergency 911.[9]

---

[6]     Beisner told Hall that she wanted to go alone to her apartment; however, Hall followed her in the apartment. (Doc. 13-5, PageID. 672-73).

[7]     Hall was unsuccessful partly because Beisner pushed and kicked at him and, otherwise, opposed his attempt to have sex with her but also because he could not achieve an erection. (*See* Doc. 13-5, PageID. 675-76).

[8]     Beisner testified that Hall choked her once again, causing her to lose consciousness for a few seconds, to only wake with her head hanging off the bed. (*See* Doc. 13-5, PageID. 677-78).

[9]     Police officers transported Beisner to Providence Hospital. (Doc. 13-5, PageID. 684). One of the officers who transported her to the hospital testified that Beisner had blood on her cheeks and marks on the inside of her mouth. (*See id.,* PageID. 744). As well, this officer testified that Beisner was distraught and crying (*id.,* PageID. 746) and that the injuries to her neck "[a]ppeared to be where somebody choked her." (*Id.,* PageID. 747).

Photographs taken of Beisner at the hospital showed redness and bruising on her neck, as well as around her lips and mouth. (*See id.,* PageID. 716-17). As well, another officer testified to observing Beisner at the hospital and seeing bruising around her neck, consistent with being choked, and dried blood on her cheeks and in the corner of her mouth. (*See id.,* PageID. 724; *see also id.,* PageID. 725 ("The red bruising around her neck is, in my experience, consistent with her statement. It was consistent with what she stated where Mr. Hall put his hands around her neck.")). And, finally, ATF Special Agent Andrew Eardman testified that he spoke with Beisner on February 25, 2016, and noted red marks on her cheeks, swelling of her right cheek, and bruising and abrasions to her neck. (*See* Doc. 13-6*,* PageID. 776; *see also id.,* (Continued)

(Doc. 13-9, PageID. 999-1000) (footnotes added).

Appellate counsel for Hall  raised three issues on direct appeal: (1) the trial court abused its discretion and denied Appellant due process by not conducting a hearing on his *pro se* Motion for New Trial (wherein he raised material ineffective assistance of trial counsel claims);  (2) the trial court abused its discretion by failing to grant Appellant's *pro se* Motion for a New Trial based on ineffective assistance of counsel; and (3) the trial court committed reversible error by not suppressing text messages and search history from Appellant's illegally obtained cell phone. (*See* Doc. 13-8, PageID. 970).[10] In its opinion released on October 5, 2018, the Alabama Court of Criminal affirmed Hall's

---

PageID. 777 ("The injuries to her neck were [consistent with strangulation]. What I've seen in numerous past strangulation cases, there were multiple bruising marks to the right side of Ms. Beisner's neck and there also appeared to be some small abrasions as well. And then there were a couple of small abrasions that almost looked like small puncture[] wounds to the left side of her neck[,] . . .  where the thumb of someone's finger applied enough pressure to the skin that the thumbnail actually punctures the skin.")).

[10]     This third claim was based, principally, upon Hall's reading of *Anderson v. State*, 212 So.3d 252 (Ala. Civ. App. 2016) and his attempt to extend the holding in *Anderson* to the facts in his case. In his brief on appeal, however, Hall did not confine himself to *Anderson* but also argued that the "holding [of his] cell phone from the initial warrantless taking on February 29, 2016 until the warrants in 2017 violates Appellant's due process, property[,] and privacy rights." (Doc. 13-8, PageID. 984; *see also id.,* PageID. 996 ("Holding Appellant's cell phone for nearly 20 months before getting a valid warrant also does not comply with the Fourth Amendment's reasonableness requirement. In United States v. Mitchell, federal agents seized the defendant's hard drive f[rom] his computer when he was arrested but waited 21 days to secure a warrant. The Court found that the agents acted with 'unreasonable delay' in securing a warrant and suppressed the evidence because it constituted a 'significant interference' with the defendant's 'possessory interest' in the hard drive. If 21 days is an unreasonable delay in securing a warrant, the 20-month delay for a valid warrant to attach here is certainly unreasonable. United States v. Mitchell, 565 F.3d 1347 (11th Cir. 2009).")). This "possessory interest"  issue was not raised by Hall to the trial court in the motion to suppress (*see* Doc. 13-15, PageID. 1098) or during the suppression hearing conducted on December 3, 2017 (*see id.,* PageID. 1101-1111); instead, Hall relied solely on the *Anderson v. State* opinion in seeking suppression of the text messages and search history on his cell phone in the trial court (*see* Doc. 13-15, PageID. 1102 & 1107-1111).

convictions, finding Hall not entitled to relief on any of his claims. (*See* Doc. 13-9,

PageID. 1002, 1004 & 1005). With respect to Hall's third claim of error on appeal,

Alabama's appellate court ruled in the following manner:

> Hall [] argues that the circuit court erred in denying his motion to suppress text messages and search history that were recovered from Hall's cell phone. The text messages contained apologies to Beisner, and the internet search history showed that Hall had searched outstanding warrants against him. The State argues that this claim is not properly before this Court because the search warrants are not in the record.

> The record shows that Hall moved to suppress evidence obtained from the search of his cell phone. (C. 88.) The circuit court issued the following order: "First search warrant obtained by detectives is suppressed and motion is granted. Court rules that the second search warrant obtained by detectives is valid and admissible. Motion to suppress second warrant is denied." (C. 90.)

> However,

> > [A]n affidavit and search warrant not contained in the record on appeal cannot be considered on review of the trial court's ruling as to its sufficiency or any of the underlying circumstances supporting the warrant.

> .     .     .

> The search warrants are not contained in the certified record that was filed on appeal or the supplemental record. "It is the appellant's duty to provide this court with a complete record on appeal." <u>Knight v. State</u>, 621 So.2d 394, 395 (Ala. Crim. App. 1993). We agree with the State that this issue is not properly before this Court for appellate review. <u>See Thomas</u>.

(*Id.,* PageID, 1004-1005) (some internal quotation marks omitted). Hall's application for

rehearing (*see* Doc. 13-10) was overruled on November 2, 2018 (Doc. 13-11) and his

petition for writ of certiorari to the Alabama Supreme Court (Doc. 13-12)[11] was denied

---

[11]     In his certiorari petition to the Alabama Supreme Court, Hall did not make any mention of his claim of error before the Alabama Court of Criminal Appeals that the trial court
(Continued)

without written opinion on January 4, 2019 (Doc. 13-13). The certificate of final

judgment of affirmance issued that same date, January 4, 2019. (Doc. 13-14).

Hall filed a Rule 32 petition in the Circuit Court of Mobile County, Alabama

collaterally attacking his convictions and sentences on or about December 20, 2019.

(*Compare* Doc. 13-15 *with* Doc. 13-20, PageID. 1333).[12] The trial court dismissed Hall's

---

erred to reversal by not suppressing text messages and search history from his illegally
obtained cell phone. (*See id.,* PageID. 1028-1033).

[12]     In his collateral petition, Hall raised numerous claims, inclusive of the following:

The trial court abused its discretion when it failed to suppress evidence
gained from an illegally executed search warrant. A warrant to search
Petitioner['s] cell phone was directed to any Mobile County Sheriff yet was
executed by a Mobile City Police officer in violation of the 4th and 14th
amendments and case law of the State of Alabama.

.     .     .

The Trial Court abused its discretion when it failed to suppress evidence
gained pursuant to a search that violated Petitioner's "possessory interest" in his
personal property. After seizing petitioner's cell phone, the State waited 17
months to obtain a warrant and search the phone. This excessive length of time
violated petitioner's 4th and 14th Amendment right to be secure in his effects and
against unreasonable searches.

.     .     .

When Petitioner was arrested by the Mobile City Police Department on
February 29, 2016 his Cell Phone was seized as evidence without a warrant. The
phone was believed to contain "text" messages in which Petitioner had allegedly
admitted his guilt to the charges against him. On July 28, 2017, 17 months after
seizing the phone, Detective Eardman of the Mobile city police [] obtained a
search warrant to search the contents of the cell Phone. Although[] the warrant
was directed to any Mobile County Sheriff, a Mobile City police officer Lane
Whittington executed the search warrant. In the October term of the Alabama
Court of Civil Appeals that Court heard a case dealing with this issue. The facts
surrounding the *Anderson* case dealt with money being seized pursuant to an
illegal search. In *Anderson* a search warrant directed to a Mobile County Sheriff
was executed by a Mobile City Police officer. That Court ruled the search was
illegal because the Mobile City [Police] Office[r] had no authority to execute it.
*Anderson v. State,* 212 So.3d 252. After learning of this *Anderson* Ruling, a
(Continued)

collateral petition on April 1, 2020. (*See, e.g.,* Doc. 13-26, PageID.1431-38). The

Alabama Court of Criminal Appeals affirmed the trial court's judgment by unpublished

memorandum decision issued on March 5, 2021. (*See* Doc. 13-20).

> On direct appeal, Hall argued, among other things, that the circuit court erred in denying his motion to suppress text messages and search history that law enforcement recovered from his cell phone. "The text messages contained apologies to Beisner, and the internet search history showed that Hall had searched outstanding warrants against him." <u>Hall</u>, mem. at 7.

> According to Hall, the trial court granted his motion to suppress the evidence law enforcement obtained from a first search warrant for the phone because the warrant was directed to a Mobile County Sheriff but the officer who performed the search was a Mobile City Police Officer. Hall argued the evidence from the second warrant should have been suppressed also. This Court did not review the issue, however, because Hall had not included the search warrants in the record on appeal.

> Hall filed his [Rule 32] petition on December 20, 2019. (C. 17, 113.) Hall alleged in his petition (1) that his appellate counsel was ineffective because counsel did not "supplement the original search warrant into the certified record on appeal" (C. 25); (2) that his trial and appellate counsel were ineffective for not raising alleged violations of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), based on the State's alleged failure to give trial counsel a copy of the first search warrant for his cell phone and were ineffective for not challenging the State's alleged use of "perjury" to get the second

---

> second warrant was obtained by Officer Terence Perkins[] on November 21, 2017. [] Petitioner's trial counsel filed a motion to suppress on November 24th, 2017. [] At the suppression hearing the day of trial, December 4th, 2017[,] trial counsel presented the court with a copy of *Anderson*. After a brief review of *Anderson*, the trial court suppressed the evidence illegally seized from the first search warrant. However, it ruled the exact same evidence could be used from the second search warrant. [] The Trial Court relied on the "good faith exception" in <u>Rivers v. State</u>, 695 So.2d 262 in it[]s making of the ruling. [] However, *Anderson* strictly forbids the "good faith exception" in *Rivers*. As in *Anderson* the warrant to search Petitioner's phone was not illegal but the execution of the warrant was.

> Therefore, the trial court abused its discretion when it failed to suppress evidence gained pursuant to the illegally execute[d] search warrant and the subsequent warrant.

(Doc. 13-15*,* PageID. 1074-75).

warrant for his cell phone (C. 27-28); (3) that the trial court erred in not suppressing the evidence taken from his cell phone (C. 30); and (4) that the trial court erred "when it allowed the State to use evidence gained pursuant to perjury" (C. 35.).

Hall moved the circuit court to supplement the record with a copy of the first search warrant, which Hall said was issued in July 2017. (C. 129.) He also moved the circuit court to supplement the record with a copy of the arrest report that he said Detective Eardman had completed. (C. 133.)

The State moved to dismiss the petition at the end of March 2020. (C. 171.) The State asserted that Hall did not plead his claims adequately, that the claims lacked merit, and that some claims were precluded under Rules 32.2(a)(2), 32.2(a)(4), and 32.2(c), Ala.R.Crim.P. The next day, the circuit court summarily dismissed Hall's petition. (C. 229.)

Hall filed another motion to "supplement" his Rule 32 petition, requesting a copy of the July 2017 warrant. (C. 290.) The circuit court denied that motion as moot. Hall timely appealed. (C. 279-80.)

.    .    .

Hall argues first that the circuit court erred in summarily dismissing his claim that his appellate counsel was ineffective for not moving to supplement the record in his direct appeal with a copy of the search warrants the State used to search the contents of his cell phone. (Hall's brief, p. 27.) In its order summarily dismissing the petition, the circuit court found that Hall did not sufficiently plead this claim and that it lacked merit. (C. 230-32.)

.    .    .[13]

Hall did not adequately plead this claim alleging ineffective assistance of counsel. Although Hall asserted that including copies of the search warrants would have changed the outcome of the appeal, he did not plead facts showing how that would have been so.

Nor did Hall plead facts showing that there is merit to the claim underlying this claim of ineffective assistance of counsel. In claim (3) of his petition, Hall alleged the trial court erred in not suppressing the evidence from his cell phone. In support of that claim, Hall alleged that in July 2017

---

[13]     Herein eliminated is the appellate court's detailed explanation of the standard, set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), for reviewing ineffective assistance of counsel claims. (*See* Doc. 13-20, PageID. 1335-37).

law enforcement obtained a warrant to search the contents of his phone. That warrant, Hall said, was "directed to any Mobile County Sheriff yet was executed by a Mobile City Police Officer . . . Lane Whittington" in violation of <u>Anderson v. State</u>, 212 So.3d 252 (Ala. Civ. App. 2016). (C. 30-31.) In <u>Anderson</u>, the Court of Civil Appeals held, in a civil-forfeiture action, that Mobile City Police Department officers had not lawfully executed the search warrant in that case because the warrant "was directed to the sheriff of Mobile County, not to the Mobile Police Department or to 'any law-enforcement officer,'" and the officers had not received assistance from the Mobile County Sheriff's Office or been deputized by the Mobile County sheriff. 2012 So.3d at 257. . . . According to Hall, after learning about the <u>Anderson</u> decision, law enforcement got a second search warrant, apparently directed to another law enforcement officer, and redid the search of Hall's cell phone, (C. 31.)

Hall's trial counsel moved to suppress the evidence retrieved from Hall's cell phone. At the suppression hearing on the day of the trial, the trial court ruled inadmissible the evidence obtained from the search warrant based on the first warrant, but the court admitted that same evidence based on the second warrant. According to Hall, the trial court relied on the "good faith exception" in <u>Rivers v. State</u>, 695 So.2d 262 (Ala. Crim. App. 1997), but Hall says that reliance was improper under <u>Anderson</u> and that the trial court should have suppressed the evidence from the second warrant.

Hall's arguments lack merit. Like the first warrant in Hall's case, an unauthorized law-enforcement officer executed the warrant in <u>Anderson</u>. But unlike <u>Anderson</u>, law enforcement in Hall's case, after realizing there was a problem with the execution of the first warrant, obtained a second warrant. Although Hall challenges the affidavit law enforcement used to get the second warrant, [], he does not challenge the execution of the second warrant. Hall reads <u>Anderson</u> as barring law enforcement from obtaining a second warrant and properly executing it if there is a defect in the execution of the first warrant. We do not read <u>Anderson</u> so broadly. Thus, <u>Anderson</u> does not give Hall a right to relief.

Because the claim underlying Hall's ineffectiveness claim lacks merit, he has no right to relief on that ineffectiveness claim. . . . The circuit court properly dismissed this claim.

.     .     .

Hall's claims alleging trial court error—issues III and IV[14] (the trial court erroneously denied Hall's motion to suppress), V (the trial court erroneously denied Hall's <u>Brady</u> claims), and VI (the trial court should not have allowed the use of evidence the State got by "perjury") in Hall's brief on appeal—are nonjurisdictional claims. <u>See, e.g.</u>, <u>Barron v. State</u>, 682 So.2d 505, 506 (Ala. Crim. App. 1996) (claim that conviction was obtained through evidence gained by an illegal search and seizure is nonjurisdictional) . . . . Thus, those claims are precluded under the applicable grounds of Rule[] 32.2(a), Ala. R. Crim. P., that the State asserted, and the circuit court did not err in summarily dismissing those claims.

The judgment of the circuit court is affirmed.

(Doc. 13-20, PageID. 1333-34, 1335 & 1337-39 & 1340) (footnotes omitted; footnotes added). Petitioner's application for rehearing (Doc. 13-21) was overruled on April 2, 2021 (Doc. 13-22, PageID. 1372). Hall's petition for writ of certiorari to the Alabama Supreme Court (*see* Doc. 13-23) was denied without written opinion on August 13, 2021 (Doc. 13-24, PageID. 1401), with the certificate of final judgment of affirmance being issued that same date (Doc. 13-25, PageID. 1402).

In his petition before this Court, filed November 12, 2021 (*see* Doc. 1, PageID. 14), Hall raises the following issues which he claims entitle him to federal habeas corpus relief: (1) his appellate attorney provided constitutionally ineffective assistance by failing to ensure a complete record on direct appeal, as his attorney did not move to supplement the record on appeal with copies of the two search warrants issued and the appellate court dismissed one of the grounds of appeal for failure to supplement the record with the search warrants (*compare* Doc. 1, PageID. 8 *with* Doc. 1-1, PageID. 21

---

[14] Issue IV was identified in Hall's appellate brief, as follows: "Whether the trial court abused its discretion when it dismissed petitioner's A.R.Crim.P. 32 petition after petitioner sufficiently pled the trial court had violated petitioner's 'possessory interest' in his personal property when the court had waited 17 months to have petitioner's seized cell phone searched." (Doc. 13-18, PageID. 1267).

& 30-32); (2) the trial court erred in failing to suppress evidence utilized at his trial[15] that had been previously suppressed by the same judge and, therefore, his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure (*compare* Doc. 1, PageID. 9 *with* Doc. 1-1, PageID. 21 & 32-34); and (3) he was entitled to relief on his claim that his possessory interest in his cell phone was violated when the State seized his cell phone without a warrant when he was arrested on February 29, 2016 but then waited some seventeen (17) months before obtaining a search warrant and searching the phone on July 28, 2017 and, therefore, again, his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure (*compare* Doc. 1, PageID. 10 *with* Doc. 1-1, PageID. 21 & 33-34).

In his Answer, the Respondent contends that this Court is procedurally barred from reaching the merits of the second and third claims for relief raised by Petitioner and that his claim of ineffective assistance of appellate counsel has no merit. (*See* Doc. 13, PageID. 140-46). Given the invocation of the procedural default doctrine, the undersigned entered a show cause order on February 24, 2022, instructing Petitioner to answer five interrogatories (Doc. 14, PageID. 1538; *see id.,* PageID. 1538-39 ("1. Do you agree with Respondent's position that one or more procedural defaults have occurred? 2. If you do not agree that a default has occurred, give each and every reason for your disagreement. 3. Assuming the Respondent is correct that a procedural default has occurred, for each listed default, give each and every reason that caused (situation, event, or agent that produced result) the default. 4. Assuming that

---

[15] The trial judge determined that the evidence utilized at trial was obtained pursuant to a lawful and lawfully-executed second search warrant.

Respondent is correct that a procedural default has occurred, for each listed default

state specifically the actual prejudice (specific harm or injury to the outcome of your

case) that you suffered as a result of the constitutional violations(s). If more than one

procedural default is alleged to have occurred, also state the actual prejudice you

suffered as a result of the combined defaults. 5. If you argue that you are actually

innocent of the crime(s) upon which your custody is based, state your reasons.")

and to respond to that portion of the Respondent's answer directed to his ineffective

assistance of appellate counsel claim (*see id.,* PageID. 1539, n.1). Hall timely filed his

response on March 28, 2022. (Doc. 15). In his response, Petitioner answered only the

first two questions posed by the Court, as follows:

### Answer 1

No. Petitioner does not agree with respondent's position that one or more
procedural defaults have occurred.

.       .       .

### Answer 2

The State has alleged that Petitioner has not exhausted his state court
remedies by failing to raise claims two and three on direct appeal. This
allegation is not true.

In the State's answer to petitioner's 28 U.S.C. § 2254 petition the
State acknowledged that "on direct appeal, Hall argued that: . . . (3) the
circuit court erred in denying his motion to suppress text messages and
search history that were recovered from Hall's cellular phone." On direct
appeal, counsel claimed that the State had violated Petitioner's
possessory interest in his cell phone when the State held Petitioner's
cellphone for 17 months before obtaining a search warrant and searching
the phone. Exhibit B 23-24 Counsel also claimed the trial court committed
reversible error by not suppressing unlawfully gained evidence. In his
argument counsel claimed that the State had unlawfully executed the
search warrant for petitioner's cell phone and that issuing a second
warrant merely to correct the unlawful action of the State "did not cure the
improper search." Exhibit B 20-23 Petitioner's direct appeal was dismissed

due to an insufficient record not on any grounds of preclusion. <u>Exhibit B 7,</u> <u>8</u> Petitioner raised the same two claims in his Ala.R.Crim.P. 32 petition to the circuit court. <u>Exhibit I, vol 1 @ 30, 31</u> The same claim[s are] now in front of this Court for review.

Although Petitioner laid out a more lengthy argument in his Rule 32 petition the claim[s] raised and argued [are] the same claim[s] as raised on direct appeal. Petitioner even relies upon the same case law in his Rule 32 as was relied upon in his direct appeal.

The State has claimed that Petitioner did not raise claims two and three on direct appeal. Petitioner's response to interrogatories and the record show the State's position is incorrect and Petitioner did in fact raise these issues to the state court[s] on direct appeal. Therefore, this Court has the authority to review Petitioner's claims.

(*Id.,* PageID. 1541, 1542 & 1543). Petitioner did not answer the Court's three other

questions (*see* Doc. 15), though instructed to do so (Doc. 14, PageID. 1538 & 1539),

and with respect to his ineffective assistance of appellate counsel claim, Hall disagreed

with the State that this claim lacks merits but stated that he did "not believe a reply to

the State's response would aid this Court in its decision-making process." (Doc. 15*,*

PageID. 1544).

## CONCLUSIONS OF LAW

### A.    Exhaustion of State Remedies and the Procedural Default Doctrine.

A threshold issue in a federal habeas corpus case brought by a state prisoner is

whether the petitioner has properly raised the federal constitutional claims in the state

courts, thereby exhausting all available state court remedies. 28 U.S.C. § 2254(b). The

origins of the exhaustion requirement are found in principles of comity, "which protect

the state court[]s['] role in the enforcement of federal law and prevent disruption of

state court proceedings." *Jackson v. Estes,* 2015 WL 5117717, *8 (N.D. Ala. Aug. 28,

2015), citing *Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379

(1982).[16] Courts have cautioned that the exhaustion requirement is not satisfied until each claim has been fully and fairly presented to the state courts for consideration. *Picard v. Connor,* 404 U.S. 270, 275-76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Heath v. Jones,* 863 F.2d 815, 818 (11th Cir. 1989).

In the process of exhausting a claim, a petitioner must comply with all "independent and adequate" state procedures, or else the petitioner will have procedurally defaulted that claim. *See Wainwright v. Sykes*, 433 U.S. 72, 86-87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). Indeed, in *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and

---

[16]        The Supreme Court has long held

that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims. (citations omitted) This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.

.        .        .

[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him.  (citations omitted) In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Coleman v. Thompson,* 501 U.S. 722, 731 & 732, 111 S.Ct. 2546, 2554-2555 & 2555, 115 L.Ed.2d 640 (1991).

adequate to support the judgment." *Id.* at 729, 111 S.Ct. at 2553-2554. This rule

applies whether the state law ground is procedural or substantive. *Id.* at 729, 111 S.Ct.

at 2554. The doctrine applies to bar federal habeas review when a state court declines

to address a petitioner's federal claims because the petitioner fails to meet a state

procedural requirement. *Id.* at 729-730, 111 S.Ct. at 2554; *see also Wainwright v.*

*Sykes, supra*, 433 U.S. at 86-87, 97 S.Ct. at 2506 (federal courts must honor legitimate

state trial and appellate procedural rules when enforced by state courts and must

decline to review on the merits claims that the state treats as barred absent a showing

of cause for non-compliance with such rules and resulting prejudice); *Alderman v. Zant*,

22 F.3d 1541, 1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state

prisoner seeking federal habeas corpus relief, who fails to raise his federal

constitution[al] claim in state court, or who attempts to raise it in a manner not

permitted by state procedural rules is barred from pursuing the same claim in federal

court absent a showing of cause for and actual prejudice from the default."), *cert.*

*denied sub nom. Alderman v. Thomas*, 513 U.S. 1061, 115 S.Ct. 673, 130 L.Ed.2d 606

(1994). "In these cases, the state judgment rests on independent and adequate state

procedural grounds." *Coleman*, 501 U.S. at 730, 111 S.Ct. at 2554 (citations omitted).

To determine whether a state court's procedural ruling constitutes an

independent and adequate state rule of decision, the Eleventh Circuit applies a three-

part test: "First, the last state court rendering a judgment in the case must clearly and

expressly state that it is relying on state procedural rules to resolve the federal claim

without reaching the merits of that claim. Secondly, the state court's decision must rest

solidly on state law grounds, and may not be 'intertwined with an interpretation of

federal law.' Finally, the state procedural rule must be adequate, *i.e.,* it must not be applied in an arbitrary or unprecedented fashion." *Judd v. Haley,* 250 F.3d 1308, 1313 (11th Cir. 2001) (internal citations omitted), quoting and citing, *Card v. Dugger,* 911 F.2d 1494, 1516 & 1517 (11th Cir. 1990). When the last state court to rule on the claim has ruled in the alternative, clearly addressing both an independent state procedural ground and the merits of the federal claim, the federal court need credit the state procedural rule and decline to address the merits of the claim. *See Harris v. Reed,* 489 U.S. 255, 264 n.10, 109 S.Ct. 1038, 1044 n.10, 103 L.Ed.2d 308 (1989).

When a petitioner has procedurally defaulted a claim, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565. The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court. Objective factors that constitute cause include interference by officials that makes compliance with the state's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel. In addition, constitutionally [i]neffective assistance of counsel is cause. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. Once the petitioner has established cause, he must show actual prejudice resulting from the errors of which he complains.

> Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one

innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice.

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (internal quotation marks and citations omitted), *superseded by statute as stated in Banister v. Davis,* ___ U.S. ___, 140 S.Ct. 1698, 207 L.Ed.2d 58 (2020).

In his answer (Doc. 13), the respondent asserts that petitioner's unconstitutional search (and/or seizure) claims are procedurally defaulted because the Alabama Court of Criminal Appeals applied several procedural default principles under Alabama law, namely, those principles found in Ala.R.Crim.P. 32.2(a), to arrive at the conclusion that these federal claims are barred from review (*compare* Doc. 13, PageID. 141-42 *with* Doc. 13-20, PageID. 1340).[17] In reaching this conclusion, Alabama's criminal appellate court found that the circuit court did not err in summarily dismissing Hall's Fourth Amendment search and seizure claims (*see id.*), the Mobile County Circuit Court having specifically determined that Hall's claim that it failed to suppress evidence obtained from the second search warrant precluded under Ala.R.Crim.P. 32.2(a)(2) as having been raised and addressed at trial (*see* Doc. 13-26, PageID. 1435), and that his Fourth Amendment claim based on his "possessory interest" in his cellphone was precluded from review under Ala.R.Crim.P. 32.2(a)(3) because it could have been but

---

[17]     In his response to the undersigned's show cause order, Hall improperly "reads" the Answer as asserting solely that he did not exhaust his state remedies with respect to claims two and three by failing to raise these claims on direct appeal (Doc. 15, PageID. 1541; *compare id. with* Doc. 13, PageID. 141), and while it cannot be gainsaid that Hall did not raise either of these claims in his certiorari petition to the Alabama Supreme Court on direct appeal (*see* Doc. 13-12, PageID. 1028-1033), the principal thrust of the Respondent's Answer is based upon the trial court's Rule 32 application of procedural default principles of state law to arrive at the conclusion that claims two and three are barred from a merits-review by this Court and the decision of the Alabama Court of Criminal Appeals upholding these procedural rulings by the trial court (*see* Doc. 13*., PageID. 141-42).

was not raised at trial (*see id.* at 1435 & 1436). *Compare, e.g., Boyd v. Commissioner, Alabama Dep't of Corrections,* 697 F.3d 1320, 1335 (11th Cir. 2012) ("We have squarely held that claims barred under Rule 32.2(a)(3) and (a)(5) are procedurally defaulted from federal habeas review."), *cert. denied,* 570 U.S. 920, 133 S.Ct. 2857, 186 L.Ed.2d 914 (2013), *with Lightfoot v. Carter,* 2018 WL 3800250, *5 (N.D. Ala. June 1, 2018) (recognizing that "[c]ourts have held that claims barred under Rules 32.2(a)(2), (5) and 32.2(b) are independent and adequate grounds that preclude subsequent *habeas* review."), *report and recommendation adopted,* 2018 WL 3795236 (N.D. Ala. Aug. 9, 2018).

The record in this case establishes that the Mobile County Circuit Court held a suppression hearing before Hall's trial began and ruled on the *Anderson* issue, the only basis raised by Hall before the trial court for excluding the text messages and search history discovered on his cell phone; the trial court, as aforesaid, suppressed the evidence seized pursuant to the first search warrant that was executed but denied the motion to suppress the very same evidence seized pursuant to execution of the second search warrant. Given that ruling, the trial court correctly found that it was procedurally barred, under Ala.R.Crim.P. 32.2(a)(2), from reaching the merits of the *Anderson* issue again, because that issued had been raised and addressed at trial, *see Lightfoot, supra,* at *5, and the Alabama Court of Criminal Appeals did not err in upholding the trial court's ruling. The record also establishes that Hall did not present his "possessory interest" search and seizure claim to the trial court in his suppression motion or during the suppression hearing; therefore, the trial court properly found that it was barred from reaching the merits of this claim because it could have been but was not raised at trial,

Ala.R.Crim.P. 32.2(a)(3), *see Boyd, supa,* 697 F.3d at 1335, and the Alabama Court of Criminal Appeals did not err in upholding the trial court's ruling.[18] Accordingly, this Court is barred from reaching the merits of any search and/or seizure claims raised by Hall absent Petitioner demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565.

Because Petitioner makes no cause and prejudice argument regarding the default of claims two and three (*see* Doc. 15 (Hall did not answer the Court's questions 3 and 4, though specifically requested to do so)), this Court should conclude that the cause and prejudice exception to the procedural default doctrine is not applicable in this case. *See Macklin v. Singletary*, 24 F.3d 1307, 1313 (11th Cir. 1994) (in abuse of the writ case, appellate court suggests that habeas courts need perform no analysis when the petitioner fails to argue an exception to application of the doctrine), *cert. denied*, 513 U.S. 1160, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995).[19]

The fundamental miscarriage of justice/actual innocence exception does not apply in this case because Petitioner has not asserted that the actual innocence

---

[18]     The procedural rulings by the Alabama Court of Criminal Appeals in this case (*see* Doc. 13-20, PageID. 1340), meet the Eleventh Circuit's three-part test, as articulated in *Judd, supra,* 250 F.3d at 1313.

[19]     Besides, even if Plaintiff is correct that he has not defaulted the *Anderson* search and seizure issue, he can establish no prejudice inasmuch as the Alabama Court of Criminal Appeals effectively addressed the merits of this claim and found that it had no merit, refusing to extend *Anderson* to cover the situation arising in Hall's case. Additionally, the undersigned would be remiss in failing to note that the evidence considered by the Alabama Court of Criminal Appeals on direct appeal, and reviewed by this Court, did not include any text messages or search history seized from Hall's cell phone.

exception is applicable (*see* Doc. 15 (Hall did not answer the Court's question 5)) and even had he asserted this exception, he cannot satisfy the standard set forth in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires Hall to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (citation omitted). Here, Hall has not come forward with any new reliable evidence that establishes his actual factual innocence of attempted rape in the first degree, domestic violence with the underlying offense of strangulation (2 counts), and third-degree felony domestic violence (2 counts), for which he was convicted on December 6, 2017. (*Compare* Doc. 15 *with* Doc. 1). Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.

**B.     Merits Review of Ineffective Assistance of Appellate Counsel Claim**

**Raised by Hall**.  In accordance with the Antiterrorism and Effective Death Penalty Act

("AEDPA"), a petitioner is entitled to habeas corpus relief "on any claim adjudicated on

the merits in state court if that adjudication resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States." *Cox v. McNeil,* 638 F.3d 1356,

1360 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)), *cert. denied sub nom. Cox v. Tucker,*

565 U.S. 906, 132 S.Ct. 309, 181 L.Ed.2d 189 (2011); *see also Jones v. Secretary,*

*Department of Corrections,* 644 F.3d 1206, 1209 (11th Cir.) ("[U]nder AEDPA, a federal

court may not grant habeas relief on a claim that has been considered and rejected by

a state court unless it is shown that the state court's decision was 'contrary to' federal

law then clearly established in the holdings of the United States Supreme Court, 28

U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146

L.Ed.2d 389 (2000); or that it 'involved an unreasonable application' of such law, §

2254(d)(1); or that it was 'based on an unreasonable determination of the facts' in the

light of the record before the court, § 2254(d)(2).")[20], *cert. denied sub nom. Jones v.*

---

[20]     As amended,  § 2254 now provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(Continued)

*Tucker,* 565 U.S. 1041, 132 S.Ct. 590, 181 L.Ed.2d 433 (2011).[21]

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by th[e
> Supreme] Court on a question of law or if the state court decides a case
> differently than th[e Supreme] Court has on a set of materially
> indistinguishable facts. Under the "unreasonable application" clause, a
> federal habeas court may grant the writ if the state court identifies the
> correct governing legal principle from th[e Supreme] Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389

(2000); *see Bottoson  v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) ("In addition, a

state court decision involves an unreasonable application of Supreme Court precedent

'if the state court either unreasonably extends a legal principle from [Supreme Court]

precedent to a new context where it should not apply or unreasonably refuses to

extend that principle to a new context where it should apply.'"), *cert. denied*, 534 U.S.

956, 122 S.Ct. 357, 151 L.Ed.2d 270 (2001).

> "A state court decision is contrary to clearly established federal law
> if it applies a rule that contradicts the governing law set forth in Supreme
> Court cases or confronts facts that are materially indistinguishable from a
> relevant Supreme Court precedent and arrives at a result opposite to the
> Court's." *Windom v. Sec'y, Dep't of Corr.,* 578 F.3d 1227, 1247 (11th Cir.
> 2009) . . . . A state court decision involves an unreasonable application of
> federal law when "it identifies the correct legal rule from Supreme Court
> case law but unreasonably applies that rule to the facts of the petitioner's
> case. An unreasonable application may also occur if a state court
> unreasonably extends, or unreasonably declines to extend, a legal
> principle from Supreme Court case law to a new context." *Putnam v.
> Head,* 268 F.3d 1223, 1241 (11th Cir. 2001) . . . . The statutory phrase
> "clearly established Federal law " "refers to the holdings, as opposed to

---

28 U.S.C. § 2254(d)(1) & (2).

[21]     The Act presumes as correct all determinations of factual issues made by a
State court and places the burden upon the petitioner of rebutting such a presumption of
correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

*Spencer v. Secretary, Dep't of Corrections,* 609 F.3d 1170, 1177-1178 (11th Cir. 2010), *cert. denied,* 562 U.S. 1203, 131 S.Ct. 1049, 178 L.Ed.2d 869 (2011).

Hall's lead claim of error in his federal habeas petition is his contention that his appellate attorney provided constitutionally ineffective assistance by failing to ensure a complete record on direct appeal, as he did not move to supplement the record on appeal with copies of the two search warrants issued and the appellate court dismissed one of the grounds of his direct appeal for failure to supplement the record with the search warrants. With respect to this ineffective assistance of appellate counsel claim, the appropriate "inquiry turns upon whether the state decision was contrary to or an unreasonable application of *Strickland.*" *See, e.g., Means v. Secretary, Dep't of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. Jul. 12, 2011) (citing *Woodford v. Visciotti,* 537 U.S. 19, 22, 24-25, 123 S.Ct. 357, 358-360, 154 L.Ed.2d 279 (2002)), *cert. denied*, 565 U.S. 1217, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012).[22]

> First, under § 2254(d)(1)'s "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of facts materially indistinguishable facts."

> Next, under the "unreasonable application" clause, a federal habeas court may "grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts" of the case. "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the

---

[22] In other words, "[i]t is beyond question that, in addressing the relevant claim, we are dealing with an area of 'clearly established Federal law [under *Strickland*].'" *Frazier, supra,* 661 F.3d at 527 n.12 (citation omitted).

case in which the principle was announced.'" Importantly, for a federal habeas court to find a state court's application of Supreme Court precedent "unreasonable," it is not enough that the state court's adjudication be "incorrect or erroneous"; that application must have been "objectively unreasonable."

*Frazier v. Bouchard,* 661 F.3d 519, 530-531 (11th Cir. 2011) (internal citations and brackets omitted), *cert. denied sub nom. Frazier v. Thomas,* 568 U.S. 833*,* 133 S.Ct. 410, 184 L.Ed.2d 58 (2012); *see also Pair v. Cummins,* 373 Fed.Appx. 979, 981 (11th Cir. Apr. 20, 2010) ("Under the 'unreasonable application' prong of § 2254(d)(1), the habeas petitioner bears the burden 'to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner.' 'The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether, that determination was unreasonable—a substantially higher threshold.'" (internal citations omitted)). The foregoing makes clear that "'[i]n addition to the deference to counsel's performance mandated by *Strickland*, the AEDPA adds another layer of deference—this one to a state court's decision— when we are considering whether to grant federal habeas relief from a state court's decision.'" *Means, supra,* 433 Fed.Appx. at 855 (citation omitted).

To prevail on an ineffective assistance of counsel claim, a petitioner/defendant is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice'

prong of a *Strickland* claim, and both prongs must be proved to prevail."), *cert. denied*

*sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[23]

The performance prong of the ineffective assistance standard
entails a deferential review of counsel's conduct. In assessing the
reasonableness of counsel's performance, courts must indulge a strong
presumption that counsel's conduct falls within the wide range of
reasonable professional assistance. Thus, the Sixth Amendment does
not require criminal defense attorneys to take a nothing to lose approach
and raise every conceivable nonfrivolous defense.

With respect to prejudice, courts ask whether there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the
proceeding would have been different. In the context of a claim that
counsel was ineffective on appeal, the court must first perform a review of
the merits of the omitted or poorly presented claim. The defendant carries
his burden of establishing prejudice if the court finds that the neglected
claim would have had a reasonable probability of success on appeal.

*Means, supra,* 433 Fed.Appx. at 855-856 (internal quotation marks and citations

omitted); *see also Pair, supra,* 373 Fed.Appx. at 981-982 & 982 ("The performance

prong of an ineffective assistance claim requires the petitioner to show that,

considering all the circumstances, his attorney's representation fell below an objective

standard of reasonableness. The standard is that of a reasonable attorney, not a

---

[23]     Given the two-prong nature of the test for adjudicating ineffective-assistance-of-
counsel claims, it can come as no surprise that "'the cases in which habeas petitioners can
properly prevail on the ground of ineffective assistance of counsel are few and far between.'"
*Johnson, supra,* 256 F.3d at 1176 (citation omitted). When applying the *Strickland* standard, it is
clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds."
*Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub
nom. Oats v. Moore*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also
Adamson v. United States,* 288 Fed.Appx. 591, 594 (11th Cir. Jul. 29, 2008) ("The defendant
must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails
to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert.
denied,* 555 U.S. 1010, 129 S.Ct. 526, 172 L.Ed.2d 385 (2008); *Butcher v. United States*, 368
F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has
not been made it need not decide whether the other one has been.").

paragon of the bar or an Aristotle or a Clarence Darrow. Moreover, judicial review of an attorney's performance is highly deferential, and the court must eliminate the distorting effects of hindsight and evaluate performance from the attorney's perspective at the time the challenged conduct occurred. In so doing, the court must indulge a strong presumption that the attorney's conduct was objectively reasonable. A petitioner fails to overcome that presumption if the challenged conduct might be considered sound trial strategy. . . .  Pair must [also] establish prejudice. It is not enough for him to show that his counsel's deficient performance had some conceivable effect on the jury's verdict. Instead, Pair must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (internal quotation marks and citations omitted)).

As explained below, Hall's sole non-defaulted claim of ineffective assistance of appellate counsel fails. Before looking at that claim, the undersigned would simply note that this is not a § 2254(d)(2) case because Petitioner nowhere (*see* Docs. 1 & 15) shows by clear and convincing evidence that any of the state courts' factual findings were unreasonable. *See, e.g., Duran v. Walker,* 223 Fed.Appx. 865, 871 (11th Cir. Mar. 29, 2007) ("[A] state court's factual findings are presumed correct, and the petitioner can rebut them only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). As such, for a state court's adjudication to result in an unreasonable determination of the facts in light of the evidence presented, '[n]ot only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence.' *Callahan v. Campbell,* 427

F.3d 897, 926 (11th Cir. 2005), *cert. denied*, 549 U.S. 952, 127 S.Ct. 427, 166 L.Ed.2d 269 (2006)."), *cert. denied,* 552 U.S. 874, 128 S.Ct. 179, 169 L.Ed.2d 122 (2007). Accordingly, the undersigned considers solely whether the merits decisions of the Mobile County Circuit Court and the Alabama Court of Criminal Appeals are contrary to, or an unreasonable application of, *Strickland v. Washington* under § 2254(d)(1).

The trial court read Hall's Rule 32 petition as asserting only that his appellate counsel provided ineffective assistance when he failed "to include the original search warrant with the record on appeal." (*See* Doc. 13-26, PageID. 1432). That court found the claim to be without merit because it suppressed the evidence obtained as a result of the original warrant and, therefore, counsel had no need to appeal the suppression decision or append the original search warrant to the record on appeal. (*See id.*). On appeal, the Alabama Court of Criminal Appeals properly read Hall's claim as broader than did the trial court, noting the claim to be that appellate counsel was ineffective in "not moving to supplement the record in his direct appeal with a copy of the search warrants the State used to search the contents of his cell phone." (Doc. 13-20, PageID. 1335). Alabama's criminal appellate court, after setting forth the legal standard from *Strickland v. Washington, supra* (*see id.,* PageID. 1335-37), determined that Hall did not adequately plead this claim (*id.,* PageID. 1337 ("Although Hall asserted that including copies of the search warrants would have changed the outcome of his appeal, he did not plead facts showing how that would have been so.")), nor did he plead facts demonstrating that the claim underlying the ineffective assistance of counsel claim had any merit (*id.*; *see also id.,* PageID. 1337-39). That underlying claim was identified as Hall's argument that the trial court erred in not suppressing the very

evidence from his cell phone, pursuant to a second search warrant, that the trial court had suppressed based on improper execution of the first warrant under *Anderson v. State,* 212 So.3d 252 (Ala. Civ. App. 2016). (*See id.,* PageID. 1337-38). The Alabama Court of Criminal Appeals found this underlying claim had no merit; the court found Hall read *Anderson* too broadly and that case, in fact, did not afford "Hall a right to relief[]" since it did not bar "law enforcement from obtaining a second warrant and properly executing it [even] if there is a defect in the execution of the first warrant." (*See id.,* PageID. 1338-39). Therefore, the Alabama Court of Criminal Appeals determined that "[b]ecause the claim underlying Hall's ineffectiveness claim lacks merit, he has no right to relief on that ineffectiveness claim." (*Id.,* PageID. 1339).

Petitioner offers this Court no citation to case law which would establish that the Alabama Court of Criminal Appeals was incorrect in its reading of the *Anderson* case and determining that the holding in that case was inapplicable in Hall's case since there was no argument that the second warrant was improperly executed. Without clear law establishing application of *Anderson* to a second warrant properly executed and obtaining the same information as an initial warrant that was improperly executed (resulting in suppression of the information obtained pursuant to the first warrant), appellate counsel would not be deficient in not moving to supplement the record in Hall's direct appeal with a copy of the search warrants the State used to search the contents of his cell phone nor can it be found that the result of Hall's appeal would have been different had the warrants been made a part of the record.[24] And because

---

[24] After all, the court that found the search warrant issue was not before it for review on direct appeal (because the search warrants were not contained in the certified record) (*see* Doc. 13-9, PageID. 1004-05), is the same court that determined Hall's appellate attorney was (Continued)

petitioner has not established the applicability of *Anderson*, the Alabama criminal appellate court's implicit determinations that appellate counsel was not deficient and the result of his appeal would not have been different are not contrary to or an unreasonable application of *Strickland v. Washington*. Accordingly, Hall's sole claim of ineffective assistance of appellate counsel lacks merit.

        **C.**    **<u>Certificate of Appealability</u>.**  Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1).  A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). The instant habeas petition is being denied partially on procedural grounds without reaching the merits of the underlying constitutional claims, such that "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000), but also on the merits of the underlying constitutional claim of ineffective

---

not ineffective in failing to move to supplement the record on his direct appeal (to include the two search warrants) because his underlying *Anderson* claim had no merit.

assistance of appellate counsel, such that a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack v. McDaniel, supra,*; *see also id.* at 483–484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Inasmuch as petitioner has defaulted his unreasonable search and seizure claims pursuant to clearly-defined procedural rules in state court, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Hall should be allowed to proceed further, *Slack, supra*, 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Moreover, with respect to Petitioner's ineffective assistance of appellate counsel claim, the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2254 habeas petition should be resolved in a different manner or

that any of the remaining issues presented are adequate to deserve encouragement to proceed further.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted by* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D. Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request for federal habeas corpus relief, pursuant to 28 U.S.C. § 2254 (Doc. 1), should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P.

72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

     **DONE** this the 8th day of April, 2022.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**